UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS DEWOLFF, An individual, | Case No. 1:09-cv-548 |
| Plaintiff, | |
| | HONORABLE PAUL L. MALONEY |
| v. | |
| HEXACOMB CORPORATION, A Delaware Corp. d/b/a PREGIS, | |
| Defendant. | |

# OPINION and ORDER

**Denying the Plaintiff's Motion to Remand the Case to State Court**

Plaintiff Thomas DeWolff ("DeWolff") worked for defendant Hexacomb Corporation, which does business as Pregis and/or Pregis Packaging ("Pregis"), from December 1996 (age 51) until his termination in February 2009 (age 63). *See* First Amended Complaint filed June 19, 2009 ("Comp") ¶¶ 10-11.[1] DeWolff worked as a die-cut assembly team leader in 2003 and as a fabrication and assembly team leader in 2007. *See* Comp ¶¶ 12-13. When Pregis consolidated those two team-leader positions in 2008, however, it denied DeWolff the opportunity to apply for the new position, which was given to someone under the age of 40. *See* Comp ¶¶ 14-15. DeWolff filed a complaint

---

[1] Paragraph 10 of the amended complaint alleges that DeWolff was sixty-three years old when he filed it in this court, while paragraph 21 alleges that he was born on April 2, 1947, making him only sixty-*two* years old at that time. Because paragraph 21 lists an exact birthdate, the court adopts its age allegation until and unless the parties present contrary evidence.

of age, sex and disability discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in July 2008 and it issued a Notice of Right to Sue in February 2009. Shortly thereafter, also in February 2009, Pregis fired "or laid off" DeWolff and replaced him with a younger employee. *See* Comp ¶¶ 16-18 and 29.

DeWolff filed the original complaint in the Ninth Circuit Court for Kalamazoo County, Michigan, on about April 16, 2009; our docket sheet does not reflect when Pregis was served with the original complaint. Pregis removed the case to this court by Notice of Removal filed June 12, 2009. On June 19, 2009, DeWolff filed two items: a motion to remand the case to state court (and award attorneys fees and costs), and a first amended complaint. Both the original and amended complaints assert claims for age discrimination and retaliatory discharge in violation of the Elliott-Larsen Civil Rights Act ("MELCRA"), MICH. COMP. LAWS § 37.2101 *et seq.*[2]

DeWolff's brief in support of his motion to remand reads, almost in its entirety:

> The Complaint alleges an amount in controversy in excess of $25,000.00 but does not specify an exact demand amount. Plaintiff is currently 63 years of age and was

---

[2] There does not appear to be any substantive difference between the factual allegations, legal theories, and prayer for relief of the original complaint and those of the amended complaint. The amended complaint changes the name of the defendant from "Pregis Innovative Packaging, Inc., A Delaware Corporation, d/b/a Pregis" to "Hexacomb Corporation, A Delaware Corp. d/b/a Pregis."

DeWolff was entitled to amend his complaint once as of right before Pregis filed an answer. *See Rogers v. AK Steel Corp.*, 1998 WL 1753590, *2 (S.D. Ohio Apr. 16, 1998) (quoting FED. R. CIV. P. 15(a)); *McCready v. Mich. State Bar*, 926 F. Supp. 618, 620 (W.D. Mich. 1995) (McKeague, J.), *aff'd o.g.*, 1996 WL 637484 (6th Cir. Nov. 4, 1996).

If DeWolff wishes to amend further, he must seek leave of court or Hexacomb's consent. *See Tucker v. Middleburg-Legacy Place*, 589 F.3d 545, 551 (6th Cir. 2008) (Griffin, J.) ("Although Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave when justice so requires,' the right to amend is not absolute or automatic.") (citing, *inter alia*, *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991)). *See, e.g., Williams v. Detroit Bd. of Ed.*, 306 F. App'x 943, 949 (6th Cir. 2009) (upholding denial of leave to amend) (citations omitted).

age 62 on the date of termination/layoff. He has received unemployment compensation from the State of Michigan in lieu of wages since the date of layoff and continues to receive those benefits at the present time. Consequently Plaintiff's claims for past and future wage loss cited by Defendant as grounds for removal does not [sic] support Defendant's position.

Defendant, in their Notice of Removal, states that the amount in controversy in this matter exceeds $75,000.00 but without specific support for that allegation. Defendant has not made the requisite showing that the jurisdictional amount is more likely to exist than not.

* * *

Merely citing [sic] that Plaintiff's complaint seeks damages "in excess of $25,000.00" does not satisfy Defendant's burden to gain removal, *Palkow v. CSX Transport, Inc.*, 431 F.3d 543 (6th Cir. 2005). The Western District of Michigan has likewise followed this rule and a recent example is *Leys v. Lowe's Home Centers, Inc.*[,] 601 F. Supp.2d 908 (WD Mich 2009).

Accordingly this matter should, in fact, be remanded. The Defendant presents no evidence of a "more likely than not" jurisdictional minimum.

The 6th Circuit authority on the minimum threshold for removal is well established and of long duration. Defendant was informed by the Complaint of Plaintiff's actual age. Defendant was on notice that Plaintiff is receiving unemployment compensation following his termination. From these factors, it is clear that Defendant seeks removal without establishing the jurisdictional requirements and without proper investigation. There, an award of fees and costs associated with the additional expense Plaintiff has borne as a result of Defendant's filing of the Notice of Removal is appropriate . . . .

P's Mot. to Remand at 2-4. On Tuesday, July 8, 2009, defendant Hexacomb filed a brief in opposition to remand. DeWolff has not filed a reply brief, and the time to do so has expired.

**The court determines that the undisputed factual allegations and evidence submitted by Hexacomb amply satisfies its burden of establishing that this case more likely than not involves more than $75,000 in controversy exclusive of interest, attorneys fees and costs.**[3]

---

[3]

The court cannot attempt to bypass this factual determination by soliciting the plaintiff's assurance that he is not seeking, and will not seek, more than the jurisdictional amount in state court. "'If a defendant asks a plaintiff to stipulate that the damages are below the jurisdictional amount [and] . . . the plaintiff refuses to stipulate, the case cannot be removed based solely on this refusal.'"

Hexacomb correctly notes that a federal district court properly considers back pay when determining the amount in controversy for diversity purposes. *See Gafford v. GE*, 997 F.2d 150, 160-61 (6th Cir. 1993) ("[Defendant]'s senior counsel . . . testified at the pretrial hearing on jurisdiction that, should Gafford prevail on her claims, she would be entitled to a sum greater than $50,000 for backpay . . . . Gafford did not offer any rebuttal witnesses . . . . [T]he district court did not err in finding that the amount in controversy exceeded $50,000."); *Bush v. GE Transportation*, 2006 WL 753112, *3 (N.D. Ohio Mar. 23, 2006) (Boyko, J.) ("As back and front pay, punitive damages, and possibly attorneys fees may be recoverable under the Ohio Revised Code, the Court finds Defendants have demonstrated [that] the claims contained in Plaintiff's complaint satisfy 28 U.S.C. § 1332's jurisdictional requirement."). *Accord Hardemon v. City of Boston*, 144 F.3d 24, 28 (1st Cir. 1998) ("There is an additional reason why Hardemon's affidavit relying on back pay to meet the amount in controversy requirement was sufficient.").[4]

Reading the complaint's allegations as supplemented by the unrebutted affidavit submitted by defendant Hexacomb, back pay in this case would consist of two components. The first back-pay component is the gap between DeWolff's 2008 Team Leader wage ($20.60 per hour) and his lower hourly wage after he lost that position ($14.58 per hour), multiplied by the number of hours he worked from loss of the Team Leader position (September 2008) and his termination on February

---

*Holt v. HMS Host USA*, 2009 WL 1794748, *2 (M.D. Tenn. June 18, 2009) (Wm. Haynes, Jr., J.) (quoting *Davis v. BASF Corp.*, 2008 WL 23018906, *2 (E.D. Mich. Nov. 24, 2003) and citing *Leys v. Lowe's Home Ctr., Inc.*, 601 F. Supp.2d 908, 917 (W.D. Mich. 2009) (Paul Maloney, C.J.)).

4

*Cf. In re CareFirst of Maryland, Inc.*, 305 F.3d 253, 256-57 (4th Cir. 2002) (noting with approval, "The district court [in *Gower v. Lehman*, 799 F.2d 925 (4th Cir. 1986)] concluded that because the remedies sought by Gower included back pay, the amount in controversy exceeded $10,000, thus bringing the case within the exclusive jurisdiction of the Court of Claims.").

-4-

25, 2009. *See* Comp ¶¶ 13, 15 and 45; Def's Opp, Affidavit of Ruth A. Lundy, Director of Human Resources for North America executed July 7, 2009 ("Lundy Affidavit") ¶¶ 6, 10-11. The first component equals the hourly differential of $6.02, multiplied by 40 hours, multiplied by 22 weeks, i.e., $5,297.

The second back-pay component runs from the pay period following DeWolff's February 25, 2009 termination (approximately March 1, 2009) through entry of judgment in this case. During that period, DeWolff lost his entire Team Leader wage ($20.60 per hour). For each month after DeWolff's termination, he lost wages equal to $20.60 multiplied by 40 hours per week, multiplied by 52 weeks per year, divided by 12 months = $3,570. DeWolff was out of work for 3.5 months before the instant complaint was filed in this court on June 12, 2009, when defendant Hexacomb effected removal, so he will seek about $3,570 per month in backpay for those 3.5 months. Next, if DeWolff prevails, he may be entitled to that $3,570-per-month in backpay for the period from the filing of the complaint until entry of judgment in this case. As Hexacomb points out, in 2008 the median time period in this district from filing of a complaint through completion of trial is 27 months. *See* Def's Opp at 4 (citing "Judicial Business of the United States Courts 2008", attached as an exhibit). Adding the 3.5 post-termination pre-complaint months to the 27 post-complaint months, the second back-pay component totals 30.5 months multiplied by $3,570 per month = $108,885. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 642 n. 10 (1975) (stating that future Social Security benefits to which plaintiff would be entitled upon a favorable judgment were to be considered in determining the amount in controversy); *accord Chabal v. Reagan*, 822 F.2d 349 (3d Cir. 1987) (in a back-pay case where the plaintiff asserts a right to continuing federal employment, the amount in controversy for Tucker Act purposes is not limited to the amount of backpay accrued

at the time the complaint was filed, but rather includes the amount of backpay the plaintiff ultimately stands to recover after the case concludes) (citing *Shaw v. Gwatney*, 795 F.2d 1351, 1354-55 (8th Cir. 1986) and *Goble v. Marsh*, 684 F.2d 12, 15-16 & n.5 (D.C. Cir. 1982)); *Broglie v. Mackay-Smith*, 541 F.2d 453 (4th Cir. 1976) (diversity jurisdiction existed where buyer's expenses in caring for a lame horse pending rescission of the purchase would accrue to more than the jurisdictional minimum before the court would likely rule on a motion to dismiss, even though damages were less than the jurisdictional minimum when the complaint was filed); *Hanson v. K Mart Corp.*, 2008 WL 4372701 (W.D. Tex. Sept. 11, 2008) ("Rather than merely assert conclusory allegations, Defendant has produced some evidence [that] Plaintiff's claim will exceed $75,000. Defendant has demonstrated back pay alone could satisfy the amount in controversy based upon the salary Plaintiff was receiving when she was terminated.").

**Finally, the court rejects DeWolff's assertion that his unemployment benefits from the State of Michigan should reduce the amount in controversy.** When sitting in diversity, this court is obligated to apply the law of the forum State. *See CenTra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir. 2008) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003)). In *Pennington v. Whiting Tubular Prods., Inc.*, 122 N.W.2d 692 (Mich. 1963), the Michigan Supreme Court held that unemployment-compensation benefits should not be deducted for a back-pay award for breach of a collective bargaining agreement. The Michigan Court of Appeals subsequently held, in a published decision, "We feel that the same rule should apply to back pay awards in employment discrimination cases." *Adama v. Doehler-Jarvis, Div. of NL Indus., Inc.*, 376 N.W.2d 406 (Mich. App. 1985) (p.c.) (P.J. Burns, JJ. Allen & Wahls), *denying plaintiff's app. for leave to appeal &*

*remanding case on other grounds*, 384 N.W.2d 34 (Mich. 1986).[5] There is an apparent exception to this rule, but it does not apply here. *See Gilliard v. Dep't of Soc. Servs.*, 354 N.W.2d 263 (Mich. App. 1982) (p.c.) (P.J. Beasley, J. Burns, 25th Cir. J. Quinnell) (unemployment-compensation and welfare benefits were properly deducted from backpay award to State employee who was discharged on allegations of welfare fraud, because Civil Service Commission rules clearly mandated such deductions, and because such double recovery would be manifestly unfair because the award would be paid by the same party which had already paid the unemployment and welfare benefits).

**Accordingly, on the basis of the second backpay component by itself, Hexacomb has shown a likelihood that more than $75,000 is at stake in this action** exclusive of interest, attorneys fees and costs, without even considering the likely award of front pay, punitive damages, and the estimated $5,297 in backpay for the post-demotion, pre-termination period discussed above. *See also Souder v. Odyssey Healthcare GP, LLC*, 2008 WL 3822281, *2 (N.D. Ohio Aug. 12, 2008) (James Carr, C.J.) (considering front pay and punitive damages, noting, "In determining whether the amount in controversy exceeds $75,000, a federal court considers potential punitive damages unless it is apparent that such damages cannot be recovered.") (citing *Hayes v. Equitable energy Resources Co.*, 266 F.3d 560, 572-73 (6th Cir. 2001)); *Szalay v. Yellow Freight Sys., Inc.*, 999 F. Supp. 972 (N.D. Ohio 1996) (Ann Aldrich, J.) (determining amount in controversy by reference to front pay, back pay, compensatory damages, and punitive damages).

---

[5] Because the court is obligated to apply Michigan state law to these common-law claims, it disregards the Sixth Circuit decisions which Hexacomb cites for the proposition that "'unemployment benefits are collateral benefits which the district court should disregard in making its award' *in a Title VII case*[.]" Hexacomb's Opp at 4 (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1170-71 (6th Cir. 1996) and citing *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 627-28 & n.13 (6th Cir. 1983)) (emphasis added).

**ORDER**

The plaintiff's motion to remand the case to state court [document #4] is **DENIED**.

This is not a final and appealable order. *See Caterpillar, Inc. v. Lewis*, ("An order denying a motion to remand, 'standing alone,' is obviously . . . not final and [immediately] appealable' as of right.") (quoting *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 578 (1954)); *Cadle Co. v. Reiner, Reiner & Bendett, P.C.*, 307 F. App'x 884, 887 (6th Cir. 2009) (Martin, <u>Griffin</u>, 8th Cir. J. John Gibson) ("An order denying a motion to remand is typically not a final order subject to immediate appeal . . . .") (citing *Fakouri v. Pizza Hut of America, Inc.*, 824 F.2d 470, 472 (6th Cir. 1987)).

**IT IS SO ORDERED** on this _____ day of July 2009.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge